Mike ORTIZ et ux., Petitioners,

v.

GREAT SOUTHERN FIRE AND CASUALTY INSURANCE COMPANY, Respondent.

No. B–8981.

Supreme Court of Texas.

March 19, 1980.

Rehearing Denied April 16, 1980.

Brown & Brown, Sam Brown and Carlton McLarty, Lubbock, for petitioners.

Bill Davis, Lubbock, for respondent.

SPEARS, Justice.

The question presented is whether an insurer is entitled to complete reimbursement out of a third-party tortfeasor's settlement payment which only partially compensates the insureds' loss. The trial court rendered summary judgment allowing the insurer subrogation in an amount equal to its payment to the insureds, and the court of civil appeals affirmed. 587 S.W.2d 818. We reverse and remand.

Mike and Olivia Ortiz obtained a fire insurance policy on their home from Great Southern Fire and Casualty Insurance Company. The Ortizes did not insure the contents of the house. On December 10, 1976 a fire did considerable damage to the Ortiz home and its contents. The Ortizes filed suit against Stacy-Mason, Inc. and its employee, Ernest A. Ekberg, alleging that the fire was caused by the negligent placement of carpet padding over a floor furnace. The petition alleged damages to the Ortizes' real property of at least $4,000 and damages to their personal property of at least $11,614.

Pursuant to the insurance policy, Great Southern had paid the Ortizes $4,000 for repairs on the insured dwelling. Thereafter, Great Southern intervened in the Ortizes' suit against Stacy-Mason, claiming a right to subrogation in the amount of $4,000. The Ortizes filed an answer denying Great Southern's right to subrogation.

Subsequently, all parties to the suit entered into a settlement agreement whereby all claims against Stacy-Mason were released. The settlement agreement provided:

> WHEREAS, the Plaintiff has alleged Four Thousand and No/100 ($4,000.00) Dollars in damage to Plaintiff's real property, and Eleven Thousand Six Hundred Fourteen and No/100 ($11,614.00) Dollars in damage to Plaintiff's personal property, which amount could well have been proved by the Plaintiff. . . .
>
> That for and in consideration of the sum of Ten Thousand and No/100 ($10,000.00) Dollars, paid into the hands of the District Clerk of Hockley County by the insurers of Defendants, Ernest A. Ekberg and Stacy-Mason, Inc., the receipt of which is hereby acknowledged, the Plaintiff and Intervenor do hereby release Defendants, Ernest A. Ekberg and Stacy-Mason, Inc., . . . of and from any and all actions, causes of action, claims, demands, damages, expenses, loss of compensation, and liability of any nature . . . growing out of the above described occurrence, . . . and fur-

ther agree that said cause shall be dismissed with prejudice at cost of each said Defendant.

Stacy-Mason deposited the $10,000 in the registry of the court. The trial court granted Great Southern's motion for summary judgment on its claim for subrogation in the amount of $4,000 and denied the Ortizes' motion for summary judgment claiming the entire $10,000 settlement fund. The court of civil appeals affirmed the trial court's judgment, holding that Great Southern was entitled to equitable subrogation to the full extent of its payments to the Ortizes. We disagree.

One reason that the right of equitable subrogation is granted to an insurer is to prevent the insured from receiving a double recovery. In the present case, however, there is no indication that the Ortizes have to any extent received a double recovery. The parties have stipulated that the Ortizes' damages were in excess of $15,000; yet, the Ortizes have received compensation of only $14,000.

■ An insurer is not entitled to subrogation if the insured's loss is in excess of the amounts recovered from the insurer and the third party causing the loss. *Propeck v. Farmers' Mut. Ins. Ass'n*, 65 S.W.2d 390, 390 (Tex.Civ.App.—Dallas 1933, no writ); *Camden Fire Ins. Ass'n v. Missouri, K. & T. Ry.*, 175 S.W. 816, 821 (Tex.Civ.App.—Dallas 1915, no writ). In *Camden, supra*, at 821 the court said:

> [An insured] should not be required to account for more than the surplus which remained in his hands after satisfying his own excess of loss in full and his reasonable expenses incurred in its recovery.

Most courts in other jurisdictions also have held that the insurer can recover only the excess collected from the wrongdoer after the insured is fully compensated for his loss, including the costs and expenses of collection. *E. g., Washtenaw Mut. Fire Ins. Co. v. Budd*, 208 Mich. 483, 175 N.W. 231, 232 (1919); *St. Paul Fire & Marine Ins. Co. v. W. P. Rose Supply Co.*, 19 N.C.App. 302, 198 S.E.2d 482, 484 (1973); *Garrity v. Rural Mut. Ins. Co.*, 77 Wis.2d 537, 253 N.W.2d 512, 514 (1977).

In *Garrity, supra,* the fire loss to the insured property exceeded the $67,227.12 paid by the insurance company. The insured sued the negligent party for $110,000, and the insurance company filed a third-party complaint against the tortfeasor, claiming priority in any amount recovered. The Wisconsin Supreme Court rejected this contention, saying that the insured is entitled to be made whole before the insurer is entitled to subrogation. The court noted that if the policyholder was not first allowed to make good his own loss, the insurer in essence becomes a competitor with the insured. Therefore, the court held that a right to subrogation does not arise until the insured's loss has been fully paid and said that when

> either the insurer or the insured must to some extent go unpaid, the loss should be borne by the insurer for that is a risk the insured has paid it to assume.

*Garrity v. Rural Mut. Ins. Co., supra,* 253 N.W.2d at 514.

■■■ The court of civil appeals cites *State Farm Mut. Auto. Ins. Co. v. Elkins,* 451 S.W.2d 528 (Tex.Civ.App.—Tyler 1970, no writ), as authority for its holding that Great Southern is entitled to complete reimbursement of its $4,000 payment for the damage to the real property. In *Elkins* the insurer was fully reimbursed even though the damages to the insured property were greater than the amount recovered from the third-party tortfeasor. We do not think the reasoning in *Elkins* is persuasive, however, and to the extent that the holding in that case conflicts with this opinion, it is disapproved. Moreover, even in *Elkins* the court recognized that when an insurer does not assist in the collection of damages from the third party tortfeasor, it must pay its share of the costs and expenses incurred in obtaining recovery from the third party, including attorney fees. *Elkins, supra,* at 531–32; *accord, Cedarholm v. State Farm Mut. Ins. Co.,* 81 Idaho 136, 338 P.2d 93, 96 (1959); *General Exch. Ins. Corp. v. Driscoll,* 315 Mass. 360, 52 N.E.2d 970, 973 (1944).

■■■ Of course, we are not holding that the amount recovered by an insured from his insurer and a third-party tortfeasor must exceed the damages to both insured and uninsured property before the insurer is entitled to subrogation. If any portion of the $10,000 settlement was intended as compensation for damage to the insured real property, Great Southern, after a deduction of its share of the cost of collection, would be entitled to subrogation to the extent that the sum of insurance collected plus the amount allocated in the settlement agreement to real property damage exceeded the Ortizes' loss to their home. The record, however, does not reflect how much of the $10,000 settlement, if any, was intended for damages to the insured real property. If a portion of the settlement was intended to be compensation for real property damages, Great Southern should have made sure that the settlement agreement so specified. In this case Great Southern has the burden to show what amount, if any, of the settlement agreement was allocated to the insured real property loss.

While it is unlikely that Great Southern would release its claim against the third-party tortfeasor without some compensation, neither the settlement agreement nor the record before us discloses what portion of the $10,000 settlement was allocated to real property loss. Thus, the trial court's summary judgment, allowing Great Southern subrogation in the amount of $4,000, was improper.[1]

The judgment of the court of civil appeals is reversed, and the cause is remanded to the trial court for disposition in accordance with this opinion.

---

1. Because of Great Southern's failure to establish its entitlement to any part of the settlement fund, it is unnecessary for us to consider whether any fact questions are raised concerning the Ortizes' costs and expenses in collecting from Stacy-Mason.