TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN






NO. 03-00-00215-CV







State Farm Mutual Automobile Insurance Company, Appellant


v.



Charles Waibel, Appellee






FROM THE COUNTY COURT AT LAW NO. 1 OF TRAVIS COUNTY


NO. 244,572, HONORABLE J. DAVID PHILLIPS, JUDGE PRESIDING







 Appellant State Farm Mutual Automobile Insurance Company ("State Farm")
appeals from the county court at law's summary judgment in favor of appellee, Charles Waibel,
awarding him expenses incurred in recovering from a third-party tortfeasor for injuries he
sustained in an automobile collision. State Farm also appeals the court's award of Waibel's trial
and appellate attorney's fees incurred in bringing this suit. State Farm's appeal is based on issues
of equity and the sufficiency of the evidence. We will reverse in part the county court at law's
summary judgment and remand the cause to that court for further proceedings.


FACTUAL AND PROCEDURAL BACKGROUND

 In August 1997 Waibel sustained personal injuries as a passenger in a car that was
struck by a vehicle driven by Marius Pocol. The owner of the vehicle driven by Pocol was
insured by Royal & SunAlliance Insurance Company ("Royal"). Pocol's liability was never
disputed by Royal. Waibel was insured by State Farm. His insurance policy provided Medical
Payment Coverage ("Med-Pay")--contractual no-fault insurance for medical expenses--of up to
$5000.

 Within days of the collision, Waibel's attorney, Lonnie Roach, notified Royal that
he represented Waibel. Waibel had signed a contingency-fee agreement with Roach that provided
for payment of one-third of any settlement received by Waibel from any third party responsible
for his injuries and "any insurance companies providing coverage to [Waibel]." Royal requested
that Roach send verification of medical bills, lost wages, and any other pertinent information
regarding Waibel's injuries. Roach did not respond to the request. In November Royal sent a
second request to Roach. Roach responded that he would send the medical information when
Waibel was "released" from his medical providers.

 Meanwhile on September 9, 1997, State Farm notified Waibel, through Roach, of
the availability of Med-Pay under Waibel's policy. State Farm's letter stated:


In the event we make a payment to you under your medical payment coverage for
bodily injury caused by someone who may be legally liable for your injuries, we
may be entitled to reimbursement of our payment. We will not seek
reimbursement for the amount we have paid if your recovery from the responsible
party plus our payments are not sufficient to pay all of your reasonable and
necessary medical expenses. Should we make payment to you, we require that you
take no action that might jeopardize our right of reimbursement. We further
request you advise us prior to settlement with any person or organization legally
responsible for your injury.


Waibel filed a Med-Pay claim with State Farm in March 1998 supported by fifteen pages of
medical bills. State Farm paid Waibel $5000 and placed Royal on notice of its subrogation claim. (1)

 In May State Farm inquired of Royal as to the status of the subrogation claim. 
Royal acknowledged receipt of State Farm's claim and requested that State Farm "provide us with
supporting documents on your subrogation claim on Charles Waibel for review. Reimbursement
of your subrogation claim will be made as soon as the information is received." On the same day,
Royal sent a letter to Roach notifying him that it had still not received any information on
Waibel's injuries or medical treatment.

 On June 30, 1998, State Farm sent Waibel a letter requesting that he not jeopardize
State Farm's right to reimbursement of the $5000 and that he notify State Farm prior to any
settlement with Royal. At about the same time, State Farm sent Royal copies of the medical
records it had received from Roach.

 On July 1 Roach sent Royal fifty-seven pages of documentation of Waibel's medical
treatment and expenses. A few days later, Royal offered to settle all claims, including State
Farm's subrogation claim, for $15,000. Roach then sent Royal seven more pages of medical
documents and counteroffered for $28,500. Roach did not mention State Farm's subrogation
claim in his counteroffer. Roach, on Waibel's behalf, ultimately agreed to a settlement. The
parties dispute the proper characterization of the settlement and its division. Waibel and Roach
claim that Roach "settled [Waibel's] entire claim against the third-party tort-feasor [Pocol] for the
sum of $22,000." State Farm contends that Royal "agreed to settle State Farm's subrogation
claim for $5,000, and Mr. Waibel's claim for $17,000." Royal issued two checks, one for
$17,000, payable to Waibel and Roach, and the other for $5000, payable to Waibel, Roach, and
State Farm. Waibel and Roach claim that a portion of the $5000 should be paid to Waibel as part
of his expenses in successfully pursuing his claim against Pocol.

 Waibel filed suit against State Farm requesting a declaratory judgment that State
Farm's "recoverable subrogation interest . . . is $5,000.00, less a pro rata share of [Waibel's]
expenses incurred in pursuing . . . his personal injury claim against the third-party tort-feasor." 
Both Waibel and State Farm filed motions for summary judgment. The county court at law
granted Waibel's motion for summary judgment, awarding him $1694.46 out of the $5000 as State
Farm's pro rata share of the expenses incurred by Waibel in obtaining recovery from Pocol. (2) By
four issues, State Farm appeals the county court at law's summary judgment complaining that it
is wrong as a matter of law and is not supported by evidence, and further appeals the court's
imposition of trial and appellate attorney's fees incurred by Waibel in this suit.


DISCUSSION


Summary Judgment

 A traditional motion for summary judgment is properly granted when the movant
establishes that there are no genuine issues of material fact to be decided and that it is entitled to
judgment as a matter of law. Tex. R. Civ. P. 166a(c); Lear Siegler, Inc. v. Perez, 819 S.W.2d
470, 471 (Tex. 1991). All doubts are resolved against the movant, and the reviewing court must
view the evidence in the light most favorable to the nonmovants. Lear Siegler, 819 S.W.2d at
471. Because the propriety of summary judgment in this case is a question of law, we review the
county court at law's decision de novo. See Natividad v. Alexis, Inc., 875 S.W.2d 695, 699 (Tex.
1994).


 A. Subrogation Expenses

 By its first three issues, State Farm asserts that it is entitled to recover its entire
subrogation interest based on contractual and equitable principles, and that Waibel has not
satisfied the elements of the common-fund doctrine.

 Waibel's policy with State Farm granted State Farm a subrogation interest;
however, contracts that give insurers the right to subrogation only confirm, but do not expand,
the equitable subrogation rights of insurers. See Esparza v. Scott & White Health Plan, 909
S.W.2d 548, 552 (Tex. App.--Austin 1995, writ denied). "To avoid injustice, the equities must
still be balanced in deciding what amount, if any, the subrogee is entitled to receive in a given
case." Id. We will not disturb a trial court's balancing of the equities unless it would be
inequitable to allow the judgment to stand. Id. (citing Kneip v. Unitedbank-Victoria, 734 S.W.2d
130, 133 (Tex. App.--Corpus Christi 1987, no writ); Davis v. Carothers, 335 S.W.2d 631, 641
(Tex. Civ. App.--Waco 1960, writ dism'd by agr.)). (3)

 An insurer's right to equitable subrogation is limited. An insurer cannot enforce
its subrogation interest until the insured has fully recovered. See Ortiz v. Great S. Fire & Cas.
Ins. Co., 597 S.W.2d 342, 343-44 (Tex. 1980). In addition, when an insurer does not assist in
the collection of damages from the third-party tortfeasor, it must pay its share of the costs and
expenses incurred in obtaining recovery from the third party, including attorney's fees. See id.
at 344 (citing State Farm Mut. Auto. Ins. Co. v. Elkins, 451 S.W.2d 528, 531-32 (Tex. Civ.
App.--Tyler 1970, no writ)).

 It is undisputed that Waibel has been fully compensated for his injuries. Waibel,
however, argues that State Farm's subrogation interest should be reduced by the expenses he
incurred in recovering from Royal. Roach sent fifteen pages of medical documents to State Farm
in support of Waibel's claim for Med-Pay under his contract of insurance. State Farm forwarded
copies of the records to Royal. Roach eventually sent over sixty pages of medical documents
directly to Royal. Even though Royal had communicated to State Farm that "[r]eimbursement of
[its] subrogation claim [would] be made as soon as the information [was] received," Royal did not
do so once State Farm sent the medical information it did possess. Instead, Royal's first
settlement offer was made to Roach alone, and it came six days after Roach first sent medical
information to Royal. Although correspondence was exchanged between Royal and Roach and
between Royal and State Farm, Royal made its initial offer to Roach. Roach's counteroffer was
sent directly to Royal.

 From the record it is clear that Roach, Waibel's attorney, negotiated the settlement
with Royal that made Waibel whole, thus allowing State Farm's subrogation interest to be
considered. State Farm urges the contrary. However, State Farm's efforts were solely focused
on protection of its subrogation interest and not on securing a settlement for Waibel. Indeed,
Waibel had to be fully compensated before State Farm's interest could be satisfied at all. See
Ortiz, 597 S.W.2d at 343-44; Esparza, 909 S.W.2d at 552.

 Whether Royal paid State Farm's subrogation claim because of State Farm's
forwarding of the initial fifteen pages of Waibel's medical records is of no consequence. Royal
did not agree to any payment until it had received medical records from Roach. It was Roach's
actions that ensured Royal's settlement. An insurer who does not assist in the collection of
damages from the third-party tortfeasor must pay its share of the costs and expenses incurred in
obtaining recovery from the third party. See Ortiz, 597 S.W.2d at 344 (citing Elkins, 451 S.W.2d
at 531-32). The county court at law determined, and we agree, that State Farm did not assist in
the recovery as a matter of law. Thus, we hold that State Farm must share in the expenses
incurred by Waibel in recovering from Royal.

 Both State Farm and Waibel draw attention to a line of cases analyzing and
applying the common-fund doctrine. (4) See Trustees v. Greenough, 105 U.S. 527 (1881); Knebel
v. Capital Nat'l Bank, 518 S.W.2d 795 (Tex. 1974); City of Dallas v. Arnett, 762 S.W.2d 942
(Tex. App.--Dallas 1988, writ denied). The common-fund doctrine is an equitable principle that
seeks to avoid unjust enrichment. Knebel, 518 S.W.2d at 799-800. Application of this doctrine
results in "charging a common fund with expenses, including attorney's fees," to distribute the
burdens of such expenses among those benefitting from the actions of one who preserves, protects,
or increases that common fund. Id. at 799.

 State Farm argues that Waibel cannot satisfy the elements that must be proved for
a party to recover under the common-fund doctrine; therefore, Waibel cannot recover under the
doctrine. Waibel argues that he has satisfied those elements. We are aware that other courts of
appeals have applied the common-fund doctrine to subrogation interests. See Valle v. State Farm
Auto. Ins. Co., 5 S.W.3d 745, 746-47 (Tex. App.--San Antonio 1999, no pet.); Texas Farmers
Ins. Co. v. Seals, 948 S.W.2d 532, 534 (Tex. App.--Fort Worth 1997, no writ); Lancer Corp. v.
Murillo, 909 S.W.2d 122, 126-27 (Tex. App.--San Antonio 1995, no writ). Because we have
determined that Waibel is entitled to recover under other principles of equity, we will not address
the applicability of the common-fund doctrine to the facts of this case. See Tex. R. App. P. 47.1.

 We overrule State Farm's first three issues.


 B. Reasonableness of Attorney's Fees

 By its fourth issue, State Farm objects to the amount of the attorney's fees awarded
to Waibel as his expenses in recovering from Royal. (5) State Farm contends that "there is no
evidence that the Attorney's fees charged by [Waibel's] counsel to his client--and indirectly to State
Farm via reduction of its subrogation claim--were reasonable or necessary or equitable." Thus,
according to State Farm, even if Waibel is entitled to his expenses, he has not proved that his
attorney's fees expenses were reasonable.

 In support of its contention, State Farm relies on Arthur Andersen & Co. v. Perry
Equipment Corp., 945 S.W.2d 812 (Tex. 1997), and Woollett v. Matyastik, 23 S.W.3d 48 (Tex.
App.--Austin 2000, pet. denied). In Arthur Andersen, the supreme court held that evidence of the
reasonableness of attorney's fees must be present to support a trial court's award under a fee-shifting statute. Arthur Andersen, 945 S.W.2d at 819. "A party's contingent fee agreement
should be considered by the fact finder, and is therefore admissible in evidence, but that
agreement cannot alone support an award of attorney's fees under [the DTPA]." Id. at 818
(citations omitted). In addition to the existence of a contingency-fee agreement, other factors that
should be considered by a fact-finder in determining the reasonableness of a fee include:

(1) the time and labor required, the novelty and difficulty of the questions
involved, and the skill required to perform the legal service properly; 


(2) the likelihood . . . that the acceptance of the particular employment will
preclude other employment by the lawyer; 


(3) the fee customarily charged in the locality for similar legal services; 


(4) the amount involved and the results obtained; 


(5) the time limitations imposed by the client or the circumstances; 


(6) the nature and length of the professional relationship with the client; 


(7) the experience, reputation, and ability of the lawyer or lawyers performing the
services; and 


(8) whether the fee is fixed or contingent on results obtained or uncertainty or
collection before the legal services have been rendered. 



Id. (citations omitted). 

 Similarly, this Court has held that a guardian seeking attorney's fees under a statute
allowing reimbursement of reasonable and necessary expenses must conform to the statute's proof
requirements. Woollett, 23 S.W.3d at 53. "Determining a reasonable attorney's fee is a question
of fact and the fee award must be supported by competent evidence." Id. at 52. In Woollett, the
application for expenses was deficient because not only did it fail to conform to the statutory
requirements, it failed under "general principles" regarding attorney's fee awards--the application
was "not based on expert testimony" and did not "detail the work completed, state the attorney's
hourly rates or the hours expended on the material relating to the guardianship, or state that the
rates are reasonable and customary in [the] county." Id. at 53. This Court concluded that the
lower court could not adjudicate the reasonableness of attorney's fees without the benefit of
evidence. Id.

 State Farm's subrogation claim is not grounded in statutory law; it is based on
contract and governed by equity. However, the basis of the claim does not relieve Waibel of his
burden to prove that the fees were reasonable. The reasoning in Arthur Andersen and Woollett
is persuasive. (6) Just as the fee-shifting statutes at issue in those cases limited recovery to
reasonable attorney's fees, Waibel is permitted only his reasonable expenses. See Ortiz, 597
S.W.2d at 343 ("An insured should not be required to account for more than the surplus which
remained in his hands after satisfying his own excess of loss in full and his reasonable expenses
incurred in its recovery." (emphasis added) (citation omitted)).

 Waibel did not present legally sufficient evidence of the reasonableness or necessity
of the attorney's fees paid by him for Roach's work in settling with Royal. (7) Although evidence
of Roach's actions was presented in establishing Waibel's right to reimbursement for his expenses,
there was not sufficient evidence of the reasonableness of the amount that was awarded. Waibel
did not present summary-judgment proof addressing the factors that a fact-finder should consider
in determining the reasonableness of attorney's fees. (8) See Arthur Andersen, 945 S.W.2d at 819. 
A court cannot adjudicate the reasonableness of attorney's fees without evidence. See Woollett,
23 S.W.3d at 53. Considering the entire summary-judgment record, Waibel has not proven that
his expenses were reasonable. Waibel is entitled to his expenses, but because those expenses are
attorney's fees, they must be reasonable and necessary. We sustain State Farm's fourth issue.


Trial and Appellate Attorney's Fees

 By its final issue, State Farm argues that the county court at law abused his
discretion in awarding trial and appellate attorney's fees in pursuing this declaratory-judgment
action because "there is no evidence that such fees were reasonable and necessary, and because
the attorney's fees award was neither equitable nor just." (9) State Farm continues, in the
alternative, that there are fact issues concerning the sufficiency of the evidence to support such
an award.

 Because we have reversed in part the county court at law's summary judgment, we
also reverse that portion of the judgment awarding trial and appellate attorney's fees without
prejudice to the right of Waibel to reurge his request.


CONCLUSION

 We reverse the part of the summary judgment awarding attorney's fees to Waibel
for his expenses in recovering from Royal and for pursuing this declaratory-judgment action. We
remand that portion of the cause to the county court at law for further proceedings not inconsistent
with this opinion. We affirm the summary judgment in all other respects.



 


 Lee Yeakel, Justice

Before Justices Kidd, Yeakel and Powers*

Affirmed in Part; Reversed and Remanded in Part

Filed: March 14, 2001

Do Not Publish












* Before John E. Powers, Senior Justice (retired), Third Court of Appeals, sitting by assignment. 
See Tex. Gov't Code Ann. § 74.003(b) (West 1998).
1. Subrogation is an equitable right that arises from an insurer paying the whole or partial debt
of another under indemnity insurance. State Farm Mut. Auto. Ins. Co. v. Elkins, 451 S.W.2d
528, 530 (Tex. Civ. App.--Tyler 1970, no writ).
2. Waibel's summary-judgment evidence reflects that he incurred $7333.33 in attorney's fees
and $122.29 in other expenses, for a total of $7455.62. The trial court assessed $1694.46, or
5/22 of Waibel's total expenses--the ratio that State Farm's subrogated interest of $5000 bears to
the overall $22,000 settlement--against State Farm.
3. The issues before us do not involve questions regarding whether State Farm has a right to
subrogation, but only how much it should receive. See Esparza v. Scott & White Health Plan,
909 S.W.2d 548, 551 (Tex. App.--Austin 1995, writ denied).
4. Waibel argues that he has satisfied the elements of a common fund, including the
requirement that his attorney assisted in the collection of the common-fund claim. State Farm
asserts that there is no evidence or insufficient evidence of at least one element of the common-fund doctrine. State Farm's arguments involving factual and legal sufficiency focus solely on the
elements of the common-fund doctrine.
5. Waibel initially responds that State Farm has waived this argument by not objecting to the
amount of attorney's fees sought by Waibel in its response to his motion for summary judgment. 
Waibel contends that State Farm first objected to the reasonableness of those fees in its motion
for new trial. We disagree; State Farm's response addresses the amount of fees sought by Waibel.
6. Indeed, Arthur Andersen has been extended to require factual evidence of the reasonableness
of attorney's fees in other contexts. See, e.g., Oram v. State Farm Lloyds, 977 S.W.2d 163, 168
(Tex. App.--Austin 1998, no pet.) (unfair insurance practices); O'Farrill Avila v. Gonzalez, 974
S.W.2d 237, 248-49 (Tex. App.--San Antonio 1998, pet. denied) (breach of contract); Lubbock
County v. Strube, 953 S.W.2d 847, 857-58 (Tex. App.--Austin 1997, pet. denied) (Whistleblower
Act). And Woollett involved the recovery of attorney's fees as a component of expenses allowed
a guardian. Woollett v. Matyastik, 23 S.W.3d 48, 52-53 (Tex. App.--Austin 2000, pet. denied).
7. The summary-judgment record did include a detailed affidavit by Roach concerning the
attorney's fees he charged to Waibel in this suit.
8. Waibel's only evidence includes (1) the contract of employment between Waibel and Roach,
which provides for payment to Roach of "33-1/3% of the total amount which may be recovered";
(2) a settlement statement, which merely states that Roach was paid one-third of the "Total
Recovery"; and (3) a list of case expenses, which only includes items such as filing and copying
fees.
9. Attorney's fees are recoverable under the Declaratory Judgments Act. See Tex. Civ. Prac.
& Rem. Code Ann. § 37.009 (West 1997).



tory-judgment action. We
remand that portion of the cause to the county court at law for further proceedings not inconsistent
with this opinion. We affirm the summary judgment in all other respects.



 


 Lee Yeakel, Justice

Before Justices Kidd, Yeakel and Powers*

Affirmed in Part; Reversed and Remanded in Part

Filed: March 14, 2001

Do Not Publish












* Before John E. Powers, Senior Justice (retired), Third Court of Appeals, sitting by assignment. 
See Tex. Gov't Code Ann. § 74.003(b) (West 1998).
1. Subrogation is an equitable right that arises from an insurer paying the whole or partial debt
of another under indemnity insurance. State Farm Mut. Auto. Ins. Co. v. Elkins, 451 S.W.2d
528, 530 (Tex. Civ. App.--Tyler 1970, no writ).
2. Waibel's summary-judgment evidence reflects that he incurred $7333.33 in attorney's fees
and $122.29 in other expenses, for a total of $7455.62. The trial court assessed $1694.46, or
5/22 of Waibel's total expenses--the ratio that State Farm's subrogated interest of $5000 bears to
the overall $22,000 settlement--against State Farm.
3. The issues before us do not involve questions regarding whether State Farm has a right to
subrogation, but only how much it should receive. See Esparza v. Scott & White Health Plan,
909 S.W.2d 548, 551 (Tex. App.--Austin 1995, writ denied).
4. Waibel argues that he has satisfied the elements of a common fund, including the
requirement that his attorney assisted in the collection of the common-fund claim. State Farm
asserts that there is no evidence or insufficient evidence of at least one element of the common-fund doctrine. State Farm's arguments involving factual and legal sufficiency focus solely on the
elements of the common-fund doctrine.
5. Waibel initially responds that State Farm has waived this argument by not objecting to the
amount of attorney's fees sought by Waibel in its response to his motion for summary judgment. 
Waibel contends that State Farm first objected to the reasonableness of those fees in its motion
for new trial. We disagree; State Farm's response addresses the amount of fees sought by Waibel.
6. Indeed, Arthur Andersen has been extended to require factual evidence of the reasonableness
of attorney's fees in other contexts. See, e.g., Oram v. State Farm Lloyds, 977 S.W.2d 163, 168
(Tex. App.--Austin 1998, no pet.) (unfair insurance practices); O'Farrill Avila v. Gonzalez, 974
S.W.2d 237, 248-49 (Tex. App.--San Antonio 1998, pet. denied) (breach of contract); Lubbock
County v. Strube, 953 S.W.2d 847, 857-58 (Tex. App.--Austin 1997, pet. denied) (Whistleblower
Act). And Woollett involved the recovery of attorney's fees as a component of expenses allowed
a guardian. Woollett v. Matyastik, 23 S.W.3d 48, 52-53 (Tex. App.--Austin 2000, pet. denied).
7. The summary-judgment record did include a detailed affidavit by Roach concerning the
attorney's fees he charged to Waibel in this suit.
8. Waibel's only evidence includes (1) the contract of employment between Waibel and Roach,
which provides for payment to Roach of "33-1/3% of the total amount which may be recovered";
(2) a settlement statement, which merely states that Roach was paid one-third of the "Total
Recovery"; and (3) a list of case expenses, which only includes items such as filing and copying
fees.
9. Attorney's fees are recoverable under the Declaratory Judgments Act. See Tex. Civ. Prac.
& Rem. Code Ann. § 37.009 (West 1997).



tory-judgment action. We
remand that portion of the cause to the county court at law for further proceedings not inconsistent
with this opinion. We affirm the summary judgment in all other respects.



 


 Lee Yeakel, Justice

Before Justices Kidd, Yeakel and Powers*

Affirmed in Part; Reversed and Remanded in Part

Filed: March 14, 2001

Do Not Publish












* Before John E. Powers, Senior Justice (retired), Third Court of Appeals, sitting by assignment. 
See Tex. Gov't Code Ann. § 74.003(b) (West 1998).
1. Subrogation is an equitable right that arises from an insurer paying the whole or partial debt
of another under indemnity insurance. State Farm Mut. Auto. Ins. Co. v. Elkins, 451 S.W.2d
528, 530 (Tex. Civ. App.--Tyler 1970, no writ).
2. Waibel's summary-judgment evidence reflects that he incurred $7333.33 in attorney's fees
and $122.29 in other expenses, for a total of $7455.62. The trial court assessed $1694.46, or
5/22 of Waibel's total expenses--the ratio that State Farm's subrogated interest of $5000 bears to
the overall $22,000 settlement--against State Farm.
3. The issues before us do not involve questions regarding whether State Farm has a right to
subrogation, but only how much it should receive. See Esparza v. Scott & White Health Plan,
909 S.W.2d 548, 551 (Tex. App.--Austin 1995, writ denied).
4. Waibel argues that he has satisfied the elements of a common fund, including the
requirement that his attorney assisted in the collection of the common-fund claim. State Farm
asserts that there is no evidence or insufficient evidence of at least one element of the common-fund doctrine. State Farm's arguments involving factual and legal sufficiency focus solely on the
elements of the common-fund doctrine.
5. Waibel initially responds that State Farm has waived this argument by not objecting to the
amount of attorney's fees sought by Waibel in its response to his motion for summary judgment. 
Waibel contends that State Farm first objected to the reasonableness of those fees in its motion
for new trial. We