**FORTIS BENEFITS, Appellant,**

v.

**Vanessa CANTU and Sundance Resources, Inc., Appellees.**

**No. 10–04–00080–CV.**

Court of Appeals of Texas, Waco.

July 13, 2005.

Rehearing Overruled Aug. 9, 2005.

Loren R. Smith, Kelly, Smith & Murrah, P.C., Thomas A. Laucius, Laucius & Asso., Houston, for appellant.

Thomas B. Cowart, Windle Turley PC, Kevin J. Cook, Payne & Blanchard LLP, Dallas, for appellees.

Before Chief Justice GRAY, Justice VANCE, and Justice REYNA.

## OPINION

BILL VANCE, Justice.

On April 12, 1998, Vanessa Cantu, then a minor, was severely injured and rendered a paraplegic in a motor vehicle ac-

cident. Suit was filed against, among others, the vehicle's manufacturer (Ford Motor Company), the vehicle's driver (Michael Patman), and Patman's employer (Sundance Resources, Inc.). Vanessa sought to recover, among other damages, actual damages for past and future medical expenses. In March 2000, Fortis Benefits, which provided health insurance benefits to Vanessa through a health insurance policy issued to her father, intervened to recover through subrogation or reimbursement the benefits that it had paid for Vanessa's health care as a result of the accident. After numerous delays (during which Vanessa reached majority), the case was set for trial for July 21, 2003.

At final pretrial on July 15, 2003, Fortis agreed on the record with all other parties that Fortis would be excused from attending the pretrial and trial until the post-verdict phase and that Fortis would look only to the plaintiff to resolve its subrogation or reimbursement claim. Before trial began, Vanessa settled her claims with the defendants for $1,445,000 and agreed with Sundance that she would be wholly responsible for Fortis's intervention claims and would secure a dismissal with prejudice of Fortis's subrogation claim against Sundance. Fortis was not involved in the settlement.

After being unable to reach an agreement with Fortis, Vanessa filed a motion for summary judgment, asserting that, because she had not been "made whole" in the settlement, Fortis was not entitled to recover anything on its subrogation or reimbursement claim, which at that time totaled $247,534.14. Vanessa's summary judgment evidence included her attorney's affidavit, which stated that her past medical expenses totaled at least $378,500 and which attached two "life care plans" that estimated Vanessa's future medical expenses to be approximately $1.7 million and $5.3 million, respectively. In its summary judgment response, Fortis included a written objection, but it did not specifically object to the affidavit testimony on the amount of Vanessa's past medical expenses, nor did it object on hearsay grounds to the life care plans attached to the attorney's affidavit.[1]

Fortis filed an affidavit of employee Cindy Drew on its contractual right to reimbursement and the amount ($247,534.14) that it had paid on Vanessa's $378,500 in medical expenses. The Drew affidavit stated that Fortis was not conceding that Vanessa's future medical care will be as high as the amount stated in her attorney's affidavit. Drew's affidavit also addressed its contingent obligations to Vanessa's future medical expenses:

it is my opinion that unless the Court holds that Fortis is relieved of paying future benefits in this case, there is a reasonable probability that Fortis will be obligated to process Vanessa Cantu's future medical benefits in accordance with the terms and conditions of her policy, so long as she continues to be an eligible insured as that term in defined under the policy, continues to pay the premiums on her policy, and continues to renew her policy with Fortis. As of this date, Vanessa Cantu's policy with Fortis is in full force and effect, and Fortis continues to process her medical

---

1. Fortis's objections were that the attorney's affidavit did not lay a foundation to demonstrate his qualifications as an expert to give opinion testimony and that it did not "present clear, undisputed evidence, in that he does not address the issue of whether his client will have to pay for her future medical care." In an order, the trial court overruled these objections.

benefits in accordance with the terms and conditions of her policy with Fortis.

But Fortis did not provide any evidence on the specific amount of Vanessa's future medical expenses and thus create a fact issue as to that amount. Vanessa's Fortis policy has a lifetime maximum benefit amount of $2 million, and $247,534.14 of that limit had been exhausted.

The trial court thus had before it uncontroverted evidence that Vanessa's past ($378,500) and future (the $1.7 million and $5.3 million life care plans) medical expenses alone exceeded either $2 million or $5.6 million, which Vanessa argued conclusively established that the $1,445,000 settlement and the benefits paid by Fortis had not made her whole.

After a hearing, the trial court granted Vanessa's summary judgment motion but granted more relief than was requested by ordering that Fortis "take nothing in its intervention in this lawsuit." Sundance then filed an amended motion for judgment, arguing that any claim by Fortis against Sundance is additionally barred by the pretrial agreement that Fortis would look only to Vanessa to satisfy its subrogation claims against the defendants. The trial court granted Sundance's amended motion for judgment. This appeal followed. We will affirm.

In its first issue, Fortis complains that the "made-whole doctrine" does not apply to its contractual right of reimbursement from Vanessa. "An insurer is not entitled to subrogation if the insured's loss is in excess of the amounts recovered from the insurer and the third party causing the loss." *Ortiz v. Great So. Fire & Cas. Ins. Co.*, 597 S.W.2d 342, 343 (Tex. 1980); *see also Oss v. United Serv.'s Auto. Ass'n*, 807 F.2d 457, 459–60 (5th Cir.1987) (noting and citing *Ortiz* ); *Texas Ass'n of School Boards, Inc. v. Ward*, 18 S.W.3d 256, 261 (Tex.App.-Waco 2000, pet. denied)

(same); *Esparza v. Scott & White Health Plan*, 909 S.W.2d 548, 551–52 (Tex.App.-Austin 1995, writ denied) (same).

While an insurance contract providing expressly for subrogation may remove from the realm of equity the question of *whether* the insurer has a right to subrogation, it cannot answer the question of *when* the insurer is actually entitled to subrogation or *how much* it should receive. *See Duval County Ranch Co. v. Alamo Lumber Co.*, 663 S.W.2d 627, 637 (Tex.App.-Amarillo 1983, writ ref'd n.r.e.); *see also Shelter Ins. Co. v. Frohlich*, 243 Neb. 111, 498 N.W.2d 74, 79 (1993). The principal purpose of an insurance contract is to protect the insured from loss, thereby placing the risk of loss on the insurer. *Ortiz*, 597 S.W.2d at 344. The insurer has accepted payments from the insured to assume this risk of loss. Therefore, if "either the insurer or the insured must to some extent go unpaid, the loss should be borne by the insurer for that is a risk the insured has paid it to assume." *Id.* (quoting *Garrity v. Rural Mut. Ins. Co.*, 77 Wis.2d 537, 253 N.W.2d 512, 514 (1977)). This basic principle cannot be summarily overcome by a boiler-plate provision in an insurance contract that purports to entitle the insurer to subrogation out of the first monies received by the insured. To find otherwise would be to defeat the fundamental contractual expectations of the average insured. *Oss v. United Servs. Auto. Ass'n*, 807 F.2d 457, 460 (5th Cir.1987).

*Esparza*, 909 S.W.2d at 551–52.

Fortis's contractual subrogation and reimbursement rights are subject to the made-whole doctrine. *Ward*, 18 S.W.3d at 259–61; *Esparza*, 909 S.W.2d at 551–52. Moreover, the subrogation and reimbursement clause is not an assignment, which

the made-whole doctrine might not apply to. *See Silverthorne v. Mosley*, 929 S.W.2d 680, 681 (Tex.App.-Austin 1996, writ denied) (mere promise to pay debt from designated fund does not create assignment); *cf. Lexington Ins. Co. v. Gray*, 775 S.W.2d 679 (Tex.App.-Austin 1989, writ denied) (distinguishing equity's application to assignment and to subrogation), *disapproved on other grounds by Amberboy v. Societe de Banque Privee*, 831 S.W.2d 793 (Tex.1992). We overrule issue one.

■ In its third issue, Fortis asserts that the summary judgment is error because Vanessa did not demonstrate as a matter of law that she was not made whole. In response to Vanessa's summary judgment motion, Fortis did not object to the life care plans as hearsay or to Vanessa's attorney's affidavit testimony that her past medical expenses were at least $378,500 and that her total past and future medical expenses exceed $2 million, based on the life care plans. Nor did Fortis file any evidence specifically relating to the amount of Vanessa's future medical expenses to create a fact issue on whether Vanessa had been made whole by the settlement and by Fortis's payment of health care benefits on her behalf. Fortis filed summary judgment evidence only on its contractual right to reimbursement, the amount that it had paid on Vanessa's behalf, and its contingent obligation to "process" future benefits.

■ The life care plans estimate Vanessa's future medical expenses to be approximately $1.7 million and $5.3 million, respectively. Assuming that the life care plans and the affidavit testimony on past medical expenses are hearsay, this evidence was not objected to by Fortis on this basis, and as such, it is admissible, competent, and sufficient to support summary judgment. *See* Tex.R. Evid. 802 (stating that hearsay not objected to has probative value); *Choctaw Properties, L.L.C. v. Aledo ISD*, 127 S.W.3d 235, 241 (Tex.App.-Waco 2003, no pet.) (hearsay must be objected to and ruling must be obtained to preserve a complaint for appeal); *Columbia Rio Grande Reg'l Hosp. v. Stover*, 17 S.W.3d 387, 396 (Tex.App.-Corpus Christi 2000, no pet.) (hearsay not specifically objected to was competent to support summary judgment motion); *In re J.A.M.*, 945 S.W.2d 320, 322 (Tex.App.-San Antonio 1997, no writ) (inadmissible hearsay in summary judgment affidavit has probative value if not objected to).

We hold that Vanessa's summary judgment evidence that her past and future medical expenses exceed $2 million is competent and sufficient to establish as a matter of law that she was not made whole by the $1,445,000 received in settlement and the $247,534.14 in health insurance benefits paid by Fortis. And if we assume that Fortis will process and pay Vanessa's future medical care, her Fortis policy has a lifetime maximum benefit of $2 million, of which $247,534.14 has been exhausted. Under the life care plan with a future medical expense estimate of approximately $5.3 million, even with the complete exhaustion of Vanessa's $2.0 million lifetime maximum benefit under her Fortis policy, the summary judgment evidence established that she would not be made whole by the $1,445,000 received in settlement and the $2 million in health insurance benefits paid by Fortis.

We also hold that, under these facts, Vanessa was not required to allocate the settlement amount to her various damages because her insured interest alone—her medical expenses—exceeds the settlement and health insurance benefits under the

respective life care plans.[2]  In conclusion, Vanessa established that under both life care plans, her insured interest—medical expenses—sustained an injury in excess of the total compensation (settlement plus health insurance benefits) that she had received or might receive.  We overrule issue three.

■ In its second issue, Fortis complains that the trial court erred in granting summary judgment by ignoring other alleged equitable issues (*e.g.*, settling without the consent of Fortis) relating to Fortis's subrogation rights.  But based on the evidence and circumstances in this case, we do not find any inequitable conduct on Vanessa's part that would constitute grounds for finding that she was "made whole" by the settlement or that she should otherwise share any of the settlement proceeds with Fortis.  *Cf. Esparza*, 909 S.W.2d at 552 (affirming trial court's award of one-half of health insurance benefits paid on behalf of plaintiff where plaintiff settled with defendant for less than policy limits, released defendant, and nonsuited claim for past medical expenses).  We overrule issue two.

■ In its fourth issue, Fortis complains about the trial court's granting of Sundance's amended motion for partial judgment on the ground that the trial court had already granted Vanessa's summary judgment motion and had completely disposed of all of Fortis's claims.  In granting Vanessa's motion for summary judgment and by ordering that Fortis "take nothing in its intervention in this lawsuit," the trial court granted excess relief as to the defendants, including Sundance.  However, the trial court corrected its error during its plenary power period, apparently finding

that Fortis's pretrial agreement precluded a recovery from the defendants.  Furthermore, Fortis was required to bring an issue on appeal concerning the summary judgment order's excess relief.  *Beathard Joint Venture v. West Houston Airport Corp.*, 72 S.W.3d 426, 436 (Tex.App.-Texarkana 2002, no pet.) (holding that appellant must raise as an issue on appeal that excess relief was improperly granted in summary judgment order); *Toonen v. United Serv's. Auto. Ass'n*, 935 S.W.2d 937, 942 (Tex.App.-San Antonio 1996, no writ) (same).  By not complaining of or briefing the summary judgment order's excess relief, Fortis has waived any complaint, and the order cannot be reversed.  *San Jacinto River Auth. v. Duke*, 783 S.W.2d 209, 209–10 (Tex.1990); *SMI/USA, Inc. v. Profile Technologies, Inc.*, 38 S.W.3d 205, 208 n. 3 (Tex.App.-Waco 2001, no pet.).

Having so found, we need not consider the remainder of Fortis's issues involving whether it had released its claims against the defendants.

The trial court's judgment is affirmed.

Chief Justice GRAY dissents with a note:  Chief Justice Gray notes that the Court's opinion and judgment dated May 25, 2005 are being withdrawn in a separate order and replaced with this opinion and a judgment of this same date.

---

**2.** Plainly, had Vanessa allocated the $1,445,000 settlement among her recoverable damage elements, Fortis's position would only have worsened, especially with the severity and permanence of her injuries, and the fact that the settlement and the health insurance did not make her whole would have been much more obvious.