Michael YSASAGA and Jill
Ysasaga, Appellants,

v.

NATIONWIDE MUTUAL INSURANCE
COMPANY, Appellee.

No. 05–07–01231–CV.

Court of Appeals of Texas,
Dallas.

Feb. 26, 2009.

Rehearing Overruled March 31, 2009.

Michael A. Ysasaga, The Ysasaga Firm, Fort Worth, TX, pro se.

Brantley Ross Pringle, Wright & Greenhill, P.C., Mike Thompson, Jr., Austin, TX, for appellee.

Before Justices BRIDGES, RICHTER, and MAZZANT.

## OPINION

Opinion by Justice RICHTER.

This case arises out of a dispute over title to a vehicle following settlement of a claim for theft of the vehicle. After reporting that his vehicle had been stolen, Michael Ysasaga initiated an action against his insurer Nationwide Mutual Insurance Company ("Nationwide") in Dallas County, Texas (the "Insurance Case"). The Insurance Case subsequently settled with payment to Ysasaga and a full release of all claims. Title to the vehicle was never formally transferred to Nationwide. After the settlement, the vehicle was recovered in Mexico and Nationwide took possession of it. Ysasaga then filed an action against Nationwide in Cameron County, Texas claiming the vehicle was his and demanding its return (the "Conversion Case"). Nationwide filed an action in Dallas County, Texas seeking a declaration that it owned the vehicle by virtue of payment of Ysasaga's theft claim (the "Dec Action"). Following a successful venue challenge by Nationwide, the Conversion Case was transferred to Dallas County and consolidated with the Dec Action (the "Consolidated Case"). The trial court granted a traditional summary judgment in favor of Nationwide. Ysasaga and his wife Jill Ysasaga (together, "Ysasaga") now appeal the trial court's judgment in the Consolidated Case. In twelve issues that can be grouped in four main categories, Ysasaga contends: (1) the trial court had no jurisdiction to consider the Dec Action; (2) the consolidation of the Conversion Case and the Dec Action was improper; (3) the trial court erred in granting summary judgment; and (4) the Cameron County court erred in granting Nationwide's motion to transfer the Conversion Case to Dallas County. Concluding that appellant's arguments are without merit, we affirm the trial court's judgment.

## I. BACKGROUND

On March 2, 2002, Ysasaga reported that his 2001 Chevrolet Corvette had been stolen in Dallas and filed an insurance claim with Nationwide. Ysasaga subsequently initiated the Insurance Case against Nationwide in Dallas County, Texas. In the Insurance Case, Ysasaga sought the recovery of damages arising out of the theft of the Corvette, including policy benefits and extra-contractual damages. Ysasaga claimed the Corvette was valued at $49,200. On March 4, 2004, the parties entered into a settlement agreement. Pursuant to the settlement, Ysasaga signed a release of all claims "which arise out of the facts alleged and situation described in [the Insurance Case]." In consideration of the release, Nationwide paid Ysasaga $110,000. From these settlement proceeds, $34,281.09 was paid to Ysasaga and First State Bank for the release of the lien on the vehicle and $75,718.91 was paid to Ysasaga and his attorneys. As provided in the release, the Insurance Case was dismissed. Despite the payment to Ysasaga and the release of the lien, title to the vehicle was never formally transferred to Nationwide.

In June 2005, the vehicle was recovered in Mexico. Nationwide informed Ysasaga of the vehicle's recovery and requested Ysasaga's endorsement of the certificate of title. In response, on August 9, 2005, Ysasaga initiated the Conversion Case in Cameron County and asserted Nationwide had converted the vehicle. Nationwide moved to transfer venue to Dallas County. On August 30, 2005, Nationwide initiated the Dec Action in Dallas County seeking a declaration that it owned the vehicle by virtue of having paid Ysasaga's theft claim. The Dec Action was abated on Ysasaga's plea because the Conversion Case had been filed first.

After a hearing, on October 3, 2006, the Cameron County court signed an order sustaining Nationwide's motion to transfer venue and directing that the Conversion Case be transferred to Dallas. Nationwide then moved for the Dallas court to lift the abatement of the Dec Action and to consolidate it with the Conversion Case. The motion was agreed to and granted by the court.

Following consolidation, Nationwide filed an amended motion for summary judgment. The motion asserted that the vehicle is the legal property of Nationwide pursuant to the settlement, payment of Ysasaga's theft claim, and payoff of the lien on the vehicle. Nationwide further argued that because it is the rightful owner of the vehicle, Ysasaga was not entitled to recover on his conversion claim. In response, Ysasaga filed a document entitled "Special Appearance, Collateral Attack on Transfer Order for Want of Jurisdiction, Motion to Transfer and Response to Nationwide's Motion for Summary Judgment." On June 19, 2007, the trial court granted Nationwide's amended motion for summary judgment declaring that Nationwide owned the vehicle and decreeing that Ysasaga take nothing on his claims against Nationwide. This appeal of the final judgment in the Consolidated Case followed.

## II. DISCUSSION

### Venue

■ Because the Cameron County court's venue determination is referenced in many of Ysasaga's other issues, we begin our inquiry here. In issues nine, ten, eleven, and twelve, Ysasaga asserts various challenges to the Cameron County court's venue determination. We need not detail these issues, however, because there is no venue record before this court. The record before us contains only the Cameron County court's order sustaining the mo-

tion to transfer venue and directing that the case be transferred to Dallas County. In the absence of a reporter's record of the venue hearing, we must presume all evidence supports the finding that the transfer of venue is proper. *See Nelson v. Am. Nat'l Bank,* 921 S.W.2d 411, 414 (Tex. App.-Corpus Christi 1996, no writ). Issues nine, ten, eleven, and twelve are overruled.

### Jurisdiction

### A. Dominant Jurisdiction

■ In his first two issues, Ysasaga argues the trial court did not have "dominant jurisdiction" to rule in the Dec Action and "erred in allowing Nationwide to absolve itself of tort liability via a declaratory judgment action." Ysasaga further contends the court allowed Nationwide to use the declaratory judgment act to "abrogate plaintiff's choice of venue." Finally, Ysasaga asserts the trial court lacked "dominant jurisdiction to award attorney's fees." As we interpret Ysasaga's argument, it is premised on two distinct concepts-dominant jurisdiction and the availability of declaratory relief.

■ With regard to dominant jurisdiction, Ysasaga maintains the Dallas court did not have dominant jurisdiction because he filed the Conversion Case first. This argument ignores the procedural reality of the case and misapplies the doctrine of dominant jurisdiction. When a lawsuit is proper in more than one county, the court in which the lawsuit is first filed acquires dominant jurisdiction to the exclusion of the other courts. *See Curtis v. Gibbs,* 511 S.W.2d 263, 267 (Tex.1974); *see also Perry v. Del Rio,* 66 S.W.3d 239, 252 (Tex.2001). The concept of dominant jurisdiction, however, is inapplicable unless venue is proper in more than one county. *Gonzalez v. Reliant Energy, Inc.,* 159 S.W.3d 615, 622 (Tex.2005); *Wyatt v. Shaw Plumbing,* 760 S.W.2d 245, 248 (Tex.1988). "As long as

the forum is a proper one, it is plaintiff's privilege to choose the forum." *Id.*

Once advised of the suit in Cameron County, the Dallas County court abated the Dec Action. The abatement was not lifted until the Cameron County court determined that Cameron County was not a proper forum for the Conversion Case. Once it was established that venue was not proper in Cameron County, the Cameron County court could not acquire dominant jurisdiction even though the case was filed there first. Because the question of dominant jurisdiction was inapplicable at the time the Dallas County court determined the merits of the case, the court's exercise of jurisdiction was not improper.

With regard to declaratory relief, Ysasaga appears to argue the Dallas County court could not award declaratory relief because the Conversion Case was first filed in Cameron County. Again, this argument is premised on a faulty procedural assumption. The Conversion Case was not pending in Cameron County at the time the Dallas court awarded declaratory relief. Instead, the Conversion Case had been consolidated with the Dec Action and was part of the Consolidated Case in which the court awarded relief.

 A declaratory judgment is a remedial action that determines the rights of the parties and affords relief from uncertainty with respect to rights, status, and legal relations. TEX. CIV. PRAC. & REM.CODE ANN. § 37.002 (Vernon 2008); *Tucker v. Graham*, 878 S.W.2d 681, 683 (Tex.App.-Eastland 1994, no writ.). Thus, "a court of record, within its jurisdiction has power to declare rights, status, and other legal relations whether or not further relief could be claimed." TEX. CIV. PRAC. & REM.CODE ANN. § 37.003(a) (Vernon 2008). A declaratory judgment is not available to settle legal disputes already pending before the court. *BHP Petroleum Co. v. Millard*, 800 S.W.2d 838, 841 (Tex.1990). This rule applies when a plaintiff's cause of action is mature and enforceable and the pending suit involves the same parties and the same issues involved in the declaratory judgment action. *Tucker*, 878 S.W.2d at 683.

 In this instance, the consolidation of the first-filed Conversion Case with the Dec Action is analogous to cases involving a declaratory judgment counterclaim. The Texas Supreme Court has recognized that in certain instances, a defensive declaratory judgement may present issues beyond those raised by the plaintiff. *BHP Petroleum Co.*, 800 S.W.2d at 841. Thus, when a declaratory judgment counterclaim has greater ramifications than the original suit, the court may allow the counterclaim. *Howell v. Mauzy*, 899 S.W.2d 690, 706 (Tex.App.-Austin 1994, writ denied). A counterclaim has greater ramifications than the original suit if it seeks affirmative relief. *HECI Exploration Co. v. Clajon Gas Co.*, 843 S.W.2d 622, 639 (Tex.App.-Austin 1992, writ denied). A counterclaim states a claim for affirmative relief if it alleges that the defendant has a cause of action independent of the plaintiff's claim, on which the defendant could recover benefits, compensation, or relief, even if the plaintiff were to abandon or fail to establish his cause of action. *Howell*, 899 S.W.2d at 706.

Here, the declaratory judgment action and conversion claim involved different issues. Ownership or the right to possession may have been an element of proof in Ysasaga's conversion claim, but the adjudication of this claim would only resolve whether Nationwide wrongfully exercised dominion or control over Ysasaga's property. *See e.g., Khorshid, Inc. v. Christian*, 257 S.W.3d 748, 758 (Tex.App.-Dallas 2008, no pet.) (listing elements of conversion). Conversely, the declaratory judgment claim sought a judicial declaration that

Nationwide is the legal owner of the vehicle. *See* TEX. CIV. PRAC. & REM.CODE ANN. § 37.004(a) (Vernon 2008). Because these are distinct issues and the declaratory judgment claim had greater ramifications than the conversion claim, the court properly considered the claim for declaratory relief.

Ysasaga's references to jurisdiction confuses the issue of whether a party is entitled to a declaratory judgment with the issue of jurisdiction. As Ysasaga acknowledges, the declaratory judgment act is not a grant of jurisdiction. Rather, it makes available the remedy of a declaratory judgment for a cause of action already in the court's jurisdiction. *See Chenault v. Phillips,* 914 S.W.2d 140, 141 (Tex.1996). As we noted previously, after the Conversion Case was consolidated with the Dec Action, dominant jurisdiction was no longer an issue. Ysasaga's argument concerning the use of a declaratory judgment to "abrogate plaintiff's choice of venue" is similarly misplaced.

To the extent Ysasaga is attempting to argue the court should have declined to exercise jurisdiction, we remain unpersuaded. A court does have limited discretion to refuse a declaratory judgment. *See* TEX. CIV. PRAC. & REM.CODE ANN. § 37.008 (Vernon 2008). However, this discretion is limited to cases where the judgment would not resolve the uncertainty giving rise to the proceedings. *See Scurlock Permian Corp. v. Brazos County,* 869 S.W.2d 478, 486 (Tex.App.-Houston [1st Dist.] 1993, writ denied). Because the declaratory judgment that Nationwide owns the vehicle resolved the ownership dispute and terminated the conversion claim, the trial court did not err in its consideration of the declaratory judgment claim. The court was also authorized to award attorney's fees. *See* TEX. CIV. PRAC. & REM.CODE ANN. § 37.009 (Vernon 2008). Ysasaga's first and second issues are overruled.

**B. Consolidation**

In his third issue, Ysasaga asserts the trial court was not "vested with the necessary jurisdiction" to consolidate the Conversion Case with the Dec Action under the Dallas County Rules. Specifically, Ysasaga complains that the transferred case was not randomly assigned in accordance with Dallas County Local Rule 1.01.

Jurisdiction refers to the power of a court, under the constitution and laws, to determine the merits of an action between the parties and render judgment. *Gordon v. Jones,* 196 S.W.3d 376, 382 (Tex.App.-Houston [1st Dist.] 2006, no pet.). Ysasaga fails to articulate a reason, nor are we aware of any that the consolidation of the two cases implicated the court's jurisdiction. Ysasaga agreed to the consolidation. Therefore, Ysasaga has waived the right to complain about the consolidation on appeal. *See* TEX.R.APP. P. 33.1(a). Ysasaga's third issue is overruled.

### Summary Judgment

In issues four, five, six, seven, and eight, Ysasaga argues the trial court erred in granting Nationwide's motion for traditional summary judgment. The standard for reviewing a traditional motion for summary judgment is well-established. *See Sysco Food Servs. v. Trapnell,* 890 S.W.2d 796, 800 (Tex.1994); *Nixon v. Mr. Prop. Mgmt. Co.,* 690 S.W.2d 546, 548–49 (Tex.1985). We review a summary judgment de novo to determine whether a party's right to prevail is established as a matter of law. *Dickey v. Club Corp.,* 12 S.W.3d 172, 175 (Tex.App.-Dallas 2000, pet. denied). A party moving for traditional summary judgment is charged with the burden to establish that there are no genuine issues of material fact and it is entitled to judgment as a matter of law. TEX.R. CIV. P. 166a(c); *M.D. Anderson Hosp. & Tumor Inst. v. Willrich,* 28

S.W.3d 22, 23 (Tex.2000) (per curiam). A matter is conclusively established if ordinary minds could not differ as to the conclusion to be drawn from the evidence. *Triton Oil & Gas Corp. v. Marine Contractors & Supply, Inc.,* 644 S.W.2d 443, 446 (Tex.1982).

In its motion for summary judgment, Nationwide argued that it acquired Ysasaga's right to possession by paying Ysasaga's theft claim and compensating him for the loss of the vehicle. The right to possession was premised on the doctrines of contractual and equitable subrogation. Nationwide further argued that because it is the rightful owner of the vehicle, Ysasaga's conversion claim fails as a matter of law. The summary judgment evidence adduced by Nationwide included a copy of the insurance policy, the release, and an affidavit on attorney's fees. Nationwide's evidence also included a copy of Ysasaga's petition in the Insurance Case which declared the vehicle was valued at $49,200. Ysasaga's evidence included his unsworn response to Nationwide's request for disclosure in the Insurance Case, his affidavit, and a trial report of a substantial jury verdict obtained by other counsel in an unrelated bad faith case. The trial court's judgment is silent as to whether the granting of the summary judgment was based on contractual or equitable subrogation. Accordingly, we will uphold the court's decision if it is correct under any theory advanced in the motion. *See Cincinnati Life Ins. Co. v. Cates,* 927 S.W.2d 623, 626 (Tex.1996); *Drake v. Wilson N. Jones Med. Ctr.,* 259 S.W.3d 386, 388 (Tex.App.-Dallas 2008, pet. denied).

## A. The Effect of The Insurance Policy

█ In his fifth issue, Ysasaga contends the trial court erred by giving effect to the underlying insurance policy because the release extinguished all subrogation rights under the policy. Neither party claims the release is ambiguous. There-

fore, we examine the release to ascertain the intent of the parties as expressed in the four corners of the document. *See Jacobson v. DP Partners Ltd. Partnership,* 245 S.W.3d 102, 106 (Tex.App.-Dallas 2008, no pet.). Ysasaga directs our attention to the release generally, but fails to identify specific language to support his contention. Having reviewed the release in its entirety, we conclude there is no indication the parties intended that it replace the insurance contract. Instead, the release is a negotiated settlement of claims asserted in the Insurance Case that bars related future claims in exchange for monetary consideration.

█ The effect of the insurance policy is significant because it is through the policy that Nationwide obtained its ownership rights by application of the principle of subrogation. Nationwide's summary judgment was based on two types of subrogation—equitable and contractual. Contractual (or conventional) subrogation is created by an agreement or contract that grants the right in exchange for payment of a loss. Equitable (or legal) subrogation does not depend on contract but arises in every instance in which one person, not acting voluntarily, has paid a debt for which another was primarily liable and which in equity should have been paid by the latter. *See Mid–Continent Ins. Co. v. Liberty Mut. Ins. Co.,* 236 S.W.3d 765, 774 (Tex.2007). Contractual subrogation clauses express the parties' intent that reimbursement should be controlled by agreed contract terms rather than external rules imposed by the courts. *Fortis Benefits v. Cantu,* 234 S.W.3d 642, 647–48 (Tex. 2007).

Here, the insurance policy provides a right of subrogation. The policy states:

If we make a payment under this policy and the person to or for whom payment was made has a right to recover dam-

ages from another, we shall be subrogated to that right ...

If we make a payment under this policy and the person to or for whom payment is made recovers damages from another, that person shall:

1. Hold in trust for us the proceeds of the recovery; and

2. Reimburse us to the extent of our payment.

The policy further provides that Nationwide's limit of liability for theft loss will be the lesser of the:

1. Actual cash value of the stolen or damaged property;

2. Amount necessary to repair or replace the property with other of like kind or quality; or

3. Amount stated in the declaration of the policy.

The policy also states that Nationwide has the option to either return the property to the insured or keep all or part of the property.

 Nationwide's summary judgment evidence established that the value of the vehicle was $49,200 and Nationwide paid Ysasaga $110,000 in exchange for which Ysasaga fully released his claim for benefits under the policy. Based on the unambiguous language of the policy, we conclude Nationwide acquired Ysasaga's ownership rights in the vehicle when this payment was made.

 A plaintiff in a conversion case must show ownership, possession or entitlement to possession of personal property. See Smith v. Maximum Racing, Inc., 136 S.W.3d 337, 341 (Tex.App.-Austin 2004, no pet.). Once Nationwide established it was entitled to ownership of the vehicle, Ysasaga could not recover on his conversion claim as a matter of law.

 Ysasaga also contends the trial court failed to recognize fact issues concerning whether he received full value for the vehicle. We construe this argument to suggest the trial court should have applied the "made-whole" doctrine. Under this principle, an insurer is not entitled to subrogation if the loss suffered by the insured is greater than the combined amount recovered from the insurer and the tortfeasor. See Esparza v. Scott & White Health Plan, 909 S.W.2d 548, 552 (Tex.App.-Austin 1995, writ denied); Ortiz v. Great Southern Fire and Cas. Ins. Co., 597 S.W.2d 342, 343 (Tex.1980). In other words, the insurer's right of subrogation may not be exercised until the insured is made whole. Ortiz, 597 S.W.2d at 343. The "made-whole" doctrine is a rule of equity. See Fortis, 234 S.W.3d at 650.

 However, these equitable considerations are not implicated when the right to subrogation arises by contract. When a contract provides for subrogation, the specific language of the contract controls and the equitable defense of the "made whole" doctrine must give way. See Osborne v. Jauregui, Inc., 252 S.W.3d 70, 80 (Tex.App.-Austin 2008, pet. denied). This result is based on the principle that "contract-based subrogation rights should be governed by the parties' express agreement and not invalidated by equitable considerations that might control by default in the absence of an agreement." Fortis, 234 S.W.3d at 650.

We have determined Nationwide's right to subrogation was defined by the policy; therefore, equitable subrogation and the "made-whole" doctrine have no application here. Because there was no material fact issue concerning Nationwide's ownership of the vehicle arising from its contractual right to subrogation, the trial court did not err when it granted summary judgment. Ysasaga's fifth issue is overruled.

## B. The Release

 In his fourth issue, Ysasaga maintains the trial court erred by "injecting its

own terms into an unambiguous release." Specifically, Ysasaga contends the release is silent concerning the transfer of ownership and contains no language to allocate a portion of the settlement proceeds for the property loss.

Ysasaga points out that a release, like any other agreement, is subject to the rules of construction governing contracts, including the principle that courts will not rewrite agreements to insert provisions parties could have included or imply restraints for which they have not bargained. *See Tenneco, Inc. v. Enter. Prods. Co.,* 925 S.W.2d 640, 646 (Tex.1996). Ysasaga further reminds us that courts must give effect to the true intentions of the parties as expressed in the written instrument. *See Lenape Res. Corp. v. Tenn. Gas Pipeline Co.,* 925 S.W.2d 565, 574 (Tex.1996).

While we do not disagree with these tenants of contract construction, the fact that the release does not transfer title is immaterial. The release is only significant to the extent that Nationwide's payment to Ysasaga under the release triggered Nationwide's subrogation rights under the insurance contract. Because title to the vehicle is transferred to Nationwide by operation of the insurance contract, the absence of ownership language in the release is of no consequence.

Ysasaga's argument concerning the allocation of the settlement proceeds is bereft of pertinent supporting authority or other explanation of the basis for this alleged error. To the extent Ysasaga suggests the release does not reflect an intent to compensate him for his property loss, we disagree. Although the release does not assign a particular dollar amount to each claim, the unambiguous language reflects the parties' intent to compensate Ysasaga for his theft claim. Ysasaga received an amount exceeding the value of the vehicle. All claims "arising out of the facts alleged and situation described in the [Insurance Case]" are released. By definition "all claims" includes the claim for property loss. Therefore, it strains the boundaries of common-sense contractual construction to suggest there was no compensation for this claim. *See e.g., DeWitt County Elec. Coop., Inc. v. Parks,* 1 S.W.3d 96, 101 (Tex.1999) (language in a contract given its plain grammatical meaning unless doing so would defeat parties' intent). On the other hand, if Ysasaga's argument concerning the allocation of proceeds is intended as a reformulation of the "made-whole" argument, we reject it for the reasons previously stated. Ysasaga's fourth issue is overruled.

## C. Enforcement of the Insurance Policy

In his seventh issue, Ysasaga contends the trial court erred by "selectively enforcing parts of a contract in favor of the breaching party." Ysasaga claims the court should not have enforced the policy because Nationwide breached the policy when it did not timely pay his claim. Breach of contract and the alleged failure to timely pay the claim, however, were the subject of the Insurance Case and are barred by the release.

A release extinguishes a claim or cause of action and bars recovery on the released matter. *Dresser Indus. Inc. v. Page Petroleum, Inc.,* 853 S.W.2d 505, 508 (Tex.1993). The pertinent language of the release states Ysasaga forever discharges and releases Nationwide:

> from any and all rights, claims, demands, actions or causes of action based upon breach of contract, breach of express warranty, bad faith, fraud ... any cause of action based upon any tort ... which arises out of the facts alleged and situation described in [the Insurance Case].

Ysasaga's petition in the Insurance Case states that the case "arises from the con-

structive denial of a claim regarding a stolen motor vehicle." This claim relating to the alleged untimely payment of his theft claim was extinguished by the release. Having released all claims and defenses in the Insurance Case, Ysasaga was barred from asserting his breach of contract claim as a defense to Nationwide's right to subrogation. Ysasaga's seventh issue is overruled.

### D. Equitable Subrogation

In his sixth issue, Ysasaga maintains the trial court erred because it shifted the summary judgment burden to the non-movant. Although Ysasaga fails to demonstrate how the burden allegedly shifted, the essence of his argument appears to be based on the court's alleged misapplication of the "made-whole" doctrine. As we have stated, the "made-whole" doctrine is only applicable in the context of equitable subrogation. *See Fortis,* 234 S.W.3d at 651.

In his eighth issue, Ysasaga complains that the trial court failed to apply the principles of equity when it applied the doctrine of equitable subrogation. We have concluded Nationwide was contractually entitled to ownership of the vehicle by virtue of having paid Ysasaga's theft claim, and the trial court did not err in its determination that Nationwide was entitled to judgment as a matter of law. Our resolution of these issues obviates the need to address the remaining issues pertaining to equitable subrogation. *See* Tex.R.App. P. 47.1. Ysasaga's sixth and eighth issues are overruled.

Having resolved all of Ysasaga's issues against him, we affirm the judgment of the trial court.