In The

*Court of Appeals*

*Ninth District of Texas at Beaumont*

_____

NO. 09-23-00247-CV
_____

LAWRENCE TRAW, Appellant

V.

WALDEN TOWN HOUSE ASSOCIATION, INC., Appellee

_____

On Appeal from the 457th District Court
Montgomery County, Texas
Trial Cause No. 21-12-16490-CV

_____

**MEMORANDUM OPINION**

Pro se Appellant Lawrence Traw ("Traw") appeals a declaratory judgment in a suit brought by Walden Town House Association, Inc. (the "Association") that sought a declaration that Traw had no authority to exert any control over property within the Walden on Lake Conroe, Section 7 (the "Subdivision") not owned by Traw, and that the Walden Section 7 Owners Organization, Inc. ("Owners Organization") created by Traw had no authority to exert any control over or

1

authority to represent any property within the Subdivision. We affirm the trial court's Final Judgment.

## Background

In December 2021, the Association filed its Original Petition and Request for Declaratory Judgment against Traw and the Owners Organization. Traw serves or had served as a Director and President of the Owners Organization. In the suit, the Association, which is the established property owner's association for the Subdivision, alleged that Traw and the Owners Organization erected bollards on the right-of-way and street easement for which the Association is responsible. Specifically, the bollards were erected across a driveway on property the Association alleged to exclusively control and that connected to an adjacent community. They were allegedly erected to prevent access to a dumpster used by the adjacent community. In addition to the cost for removal of the bollards, the Association requested that the trial court find: (1) that the Association has the vested authority to manage, maintain, and exert exclusive authority over the rights-of-way and street easements within the Subdivision, (2) that the Owners Organization does not have the authority to exert any control over or represent any properties within the Subdivision, and (3) that Traw has no authority as an owner to exert independent control over or authority to represent any properties in the Subdivision not owned by him. The Association attached as exhibits the Deed and Restrictions for the

2

Subdivision, the plat and legal description of the Subdivision, a photo of the erected bollards, a plat of where the bollards were located, the Owners Organization's Certificate of Formation filed with the Texas Secretary of State, the Owners Organization's Articles of Incorporation, and a complaint filed by the Owners Organization against Waste Management for an emergency temporary restraining order, preliminary injunction, and permanent injunction.

In February 2022, the Association filed a Motion for No Answer Default Judgment against the Owners Organization with supporting affidavits. The trial court later granted the Motion. After attempting unsuccessfully to serve Traw, the trial court granted the Association's request for substitute service of process.

In March 2022, Traw, as a pro se litigant, filed a Motion to Dismiss Plaintiff's Original Petition on behalf of himself and the Owners Organization. In the Motion, Traw and the Owners Organization argued that under the Property Code, the Association was required to notify the owner to cure the situation and requested that the Association be required to hold an open meeting with him.

A month later, the Owners Organization filed a Motion for New Trial that argued its failure to appear was not intentional, but that its registered agent failed to forward the Original Petition. The Owners Organization further argued that the Association has no standing to bring the action because the Association does not

3

own any rights to the private roads in Walden on Lake Conroe, Section 7. After a hearing, the trial court granted the Owners Organization's Motion for New Trial.

In March 2023, the bench trial began. The Association called Michael Herminghaus, former President of the Association, as its first witness. Herminghaus testified that he owns a home in the Subdivision that he purchased in 2000. He acknowledges that the Subdivision is subject to Restrictive Covenants and that the restrictions run with the land within the Subdivision except certain Parking Reserves and Green Belt Reserves, which are only subject to restrictions in Article II, Section 7 of the Restrictive Covenants. Specifically, the Restrictive Covenants, which were admitted into evidence, state:

> NOW, THEREFORE, Declarants hereby adopt, establish and impose upon WALDEN ON LAKE CONROE, SECTION SEVEN, and declare the following reservations, easements, restrictions, covenants and conditions, applicable thereto, all of which are for the purpose of enhancing and protecting the value, desirability and attractiveness of the land, which reservations, easements, covenants, restrictions and conditions shall run with the land and shall be binding upon all parties having or acquiring any right, title or interest therein, or any part thereof, and shall inure to the benefit of each owner thereof; save and except Parking Reserves "1", "2", "3", "4", "5", "6", "7", "8" and "9" and Green Belt Reserves "A", "B", "C", "D", "E", "F", "G", "H", "J", "K", "L", "M", "N", "P", "Q" and "R" which are not subject to these Restrictions, Covenants and Conditions, except as set out herein in Article II, Section 7.

Herminghaus testified that Article 11, Section 7 states that Green Belt Reserves and Parking Reserves, and all streets, except for Melville Drive, are

4

restricted for the use of the property owners of the Subdivision and their guests. The Restrictive Covenants state:

> WALDEN ON LAKE CONROE SECTION SEVEN'S Green Belt Reserves "A" through "H" and "J", "K", "L", "M", "N", "P", "Q" and "R" and Parking Reserves "1" through "9", inclusive and any other improvements therein and all streets except Melville Drive are restricted for use of property owners of WALDEN ON LAKE CONROE, SECTION SEVEN and their guests.

Herminghaus agreed that Article II, Section 7 did not create an easement right giving owners a right to use the Greenbelts, but it restricts what the owner of the Greenbelts is allowed to do with the property.

Herminghaus testified that Greenbelt Reserve R crosses over a driveway that provides access to an adjoining development called Harbour Village Condominiums ("Harbour Village"). Herminghaus agreed that a driveway provides access to the Harbour Village parking lot where a dumpster is also located. According to Herminghaus, a portion of the driveway is on Greenbelt Reserve R property, and the dumpster used to be partially on greenbelt reserve property and mostly on the Harbour Village property. Herminghaus acknowledged that the Association entered into a shared access and use agreement with Harbour Village to allow use of a road within the Subdivision to enter the Harbour Village parking lot.

Herminghaus further testified that a Special Warranty Deed recorded in 1982 indicates that the developers of the Subdivision conveyed ownership of Greenbelt Reserves A, B, C, D, E, F, G, H, J, K, L, M, N, P, Q, and R and Parking Reserves 1,

5

2, 3, 4, 5, 6, 7, 8, and 9 to the Association.[1] The Special Warranty Deed was admitted as an exhibit.

Herminghaus testified that he was invited to join the Board of Trustees for the Association in February 2018. At the time, other trustees included Traw, Peter Sheppard, Al Truskowski, and Paula Hendrick. Herminghaus testified that he first became aware that Traw had an issue with the dumpster in the Harbour Village parking lot next to Greenbelt Reserve R property in April 2020 when Traw replied to an email with a photo of the dumpster overflowing, that told the Board that the "dumpster needs to go." Later that month, Traw and some neighbors put small traffic cones on the road to block access to the Harbour Village parking lot. A photo of the driveway blocked with traffic cones was admitted into evidence. Herminghaus further acknowledged that Traw sent a letter to the Association on behalf of Homeowners of Walden Townhouse Association that threatened legal action if the dumpster, partially located on a greenbelt reserve, was not removed within ten days. Herminghaus testified that although the dumpster was not removed in ten days, the Association's Board began discussing relocating the dumpster with Harbour Village.

---

[1] A corrective Deed was later filed in 1987. On or about that same time, the Association conveyed via a Quitclaim Deed all portions of Greenbelt Reserve L and Parking Reserve 6 to Federal National Mortgage Association to clear a potential title issue. Both the corrective Deed and Quitclaim Deed were admitted as exhibits at trial.

However, all discussions ceased once three steel rebars were installed in September 2020. Herminghaus described the rebars as steel poles drilled into the driveway. A photo of the rebars was admitted into evidence and Herminghaus testified that his belief is that the posts on the right and middle are possibly on the greenbelt reserve, but the post on the left is on Harbour Village property.

According to Herminghaus, Traw did not have permission to install the rebar on the greenbelt reserve. The Association's Board instructed Traw and his neighbors not to erect any structures on the greenbelt reserve and to leave all negotiations to the Board; however, Traw did not follow these instructions. Herminghaus believed that Harbour Village's maintenance technician, Paul Bond, removed the rebar posts.

Once the rebar posts were removed, Peter Sheppard, a neighbor of Traw and member of the Association, filed a suit against Bond for the removal of the rebar posts. Traw and neighbor Christine Gallo were later added as Plaintiffs. According to Herminghaus, at a meeting between the Board and homeowners of Block 13, Traw admitted that he paid to have the rebar posts installed.

Herminghaus testified that a Certificate of Formation filed with the Secretary of State in December 2020 indicates the formation of a nonprofit corporation called Walden Section 7 Owners Organization, Inc., and the initial directors listed are Traw, Sheppard, and Mary Salisbury. According to the Certificate of Formation, the Owners Organization was formed to research HOA laws and does not indicate that

7

its purpose is to represent property owners in the Subdivision or will have any members.

Herminghaus then testified regarding a letter dated January 2021, from the Owners Organization President, Traw, to Waste Management that informed Waste Management that continued use of Lakewood Drive would result in a lawsuit against them. The letter stated that this was the last notice that Waste Management would receive.

In July 2021, the Owners Organization filed a Complaint for Emergency Temporary Restraining Order, Preliminary Injunction and Permanent Injunction against Waste Management. In the Complaint, the Owners Organization states that a Cease-and-Desist letter was sent to Waste Management requesting that Waste Management stop trespassing on the Owners Organization's property and to move the Waste Management dumpster that is on the Owners Organization's property. Because Waste Management failed to comply, the Complaint was filed.

Herminghaus testified that the Owners Organization does not own Greenbelt Reserve R, Lakewood Drive, any real property within the Subdivision, the parking lot where the dumpster was located, or any property in Texas. According to Herminghaus, he is not sure what harm or property the Owners Organization is referring to in the Complaint against Waste Management. Herminghaus attended the

8

hearing to dismiss the case for want of prosecution and he recalled that Traw did not appear at the hearing and the case was dismissed.

Herminghaus testified that the Association directed its general counsel to send Traw, Sheppard, and the Owners Organization a cease-and-desist letter. In the letter, the Association requested that certain past activities cease that included:

- Meeting with county staff at Montgomery County claiming to represent the Subdivision;

- Sending emails to Association members claiming to be representing them on behalf of the Subdivision;

- Filing a lawsuit against a maintenance man for actions on the Associations property without legal standing to do so;

- Contacting and threatening to sue Harbour Village about its dumpster and threatening to block access to the Association's road without legal standing;

- Blocking the access entry to Harbour Village's dumpster in violation of the law;

- Threatening in a letter to sue the Association and or the Board on behalf of people who had not authorized the letter; and

- Creating confusion among members of the Association concerning the legal representation of the Association.

The letter further noted that the following future activities were unacceptable:

- Claiming to represent the Association;

- Interfering in the Association's negotiations with Harbour Village;

- Claiming to represent the Subdivision; and

• Claiming to represent persons in connection with the Section 7 neighborhood who have not given their permission for you to act on their behalf.

Traw responded to the Association's cease and desist letter with certain demands of the Association. In the letter, Traw makes several statements regarding his actions that included:

• We can send emails to anyone we want. It is not the board's right to censor any person's emails. We do represent homeowners on issues that they want us to represent them on. It is not the Board's task to determine whom we can represent and whom we cannot. Frankly, it is none of the Board's business;

• This statement to stop filing a lawsuit against a person is about as ignorant as this cease and desist letter. We have all the standing we need to file any lawsuit against anybody we want. A judge in a court of law can only determine standing and the Board is definitely not a judge;

• We will continue to contact and file, not just threaten, a lawsuit against Harbour Village and block access anytime we want and there is nothing the Board can do about it;

• We can and will block access from and to Harbour Village anytime we want and as you have learned recently, it is not illegal;

• We do represent our Subdivision whether the Board likes it or not. The Owners Organization is alive and well and represents the vast majority of Section 7 homeowners;

• We are ready, willing and able to defend our position in a Court of Law, if need be, and as a matter of fact, we are looking forward to it. If the Board feels there is a violation of law on any of these points address, by all means file a lawsuit; we will destroy you in court; and

• I hope that the Board takes this letter and demands very seriously.

Enclosed with Traw's response letter is a draft petition wherein Traw and Sheppard sue the Association and Board for libel and slander. Included in the petition are the following statements:

• The Board never responded in an appropriate timeframe on any questions submitted related to the encroachment on the Plaintiff's property. The Plaintiffs were tired of waiting and had a survey done at their own expense and discovered that Harbour Village placed their dumpster on [the Subdivision's] property and that the roads were private.

• After several months of the Board's incompetence and negligence, the Plaintiffs became impatient with the Board's inaction and sent several emails to Harbour Village requesting that they remove the structures constructed on [the Subdivision's] property. The Plaintiffs were told that they needed to proceed through the [Association]. The Plaintiffs contacted the Defendant no response. So the Plaintiffs, in accordance with Texas law, proceeded on their own to correct the problem.

• The Plaintiffs then had rebar installed temporarily to stop the trash trucks from trespassing on [the Subdivision's] property.

Herminghaus testified that from his understanding Traw also removed the wooden enclosure for the Harbour Village dumpster in October 2021.

In November 2021, Traw drilled holes and installed metal bollards on the Greenbelt Reserve R portion of the driveway for the Harbour Village parking lot. According to Herminghaus, neither Traw nor the Owners Organization had permission or consent to install metal bollards on property owned by the Association. Herminghaus testified that the Association's Board actually instructed Traw not to erect any structures. The Association's Board had the bollards removed as it not only blocked the dumpster, but also the driveway for the residents and

11

emergency vehicles. Within two weeks of installation, the Board had the bollards removed at a cost of $199.00.

According to Herminghaus, after the bollards were removed in November 2021, Traw emailed the Association's Board and suggested they hire an attorney to handle future issues. In the email, Traw then stated that the Association owns the common areas, but not the roads. Herminghaus agreed that Traw's statement was an admission that the Association owned Greenbelt Reserve R. Traw then suggested that the common areas had been foreclosed on and because of the foreclosure, the Association had no authority to regulate the common areas. Herminghaus testified that he is not aware of any foreclosure on common areas or of any warranty deed conveying ownership of Greenbelt Reserve R.

Next, the email requested that the bollards be reinstalled, and he has a prepared lawsuit against the Board that will be filed that week, and that in the lawsuit, he would be asking for damages and repercussions against Herminghaus and another Board member. Herminghaus testified that Traw filed a small claims lawsuit later that same month against the Association for slander, defamation, and filing false police reports. Traw sought damages in the amount of $20,000.00. Traw voluntarily nonsuited the lawsuit in April 2022.

Herminghaus testified that as a result of Traw's actions, threats, lawsuits, and accusations, the Association filed the current lawsuit against Traw. Traw's actions

12

and lawsuits filed caused the Association to submit liability insurance claims on its directors and officers, which cost the Association damages, including an increase in insurance premiums and attorney's fees.

Next, the Association called Traw. Traw testified that he and his wife have owned property in the Subdivision at 3842 Lakewood Drive since 2015. Traw testified that he is not a lawyer and has never claimed to be an officer of the court. Traw admitted that he, along with ten others, installed rebar spikes in the Greenbelt Reserve R portion of the driveway to Harbour Village, along with removing the enclosure around the dumpster. Traw also admitted that he installed or caused to be installed the metal bollards across the driveway in November 2021. Traw testified that he, along with others, incorporated the Owners Organization, and it was intended to be a religious organization to host events and discuss issues in the Subdivision, but never to conflict with the Association. He admitted that the Owners Organization's purpose as stated on the Certification of Formation "to research HOA laws" was "just to put something on there, actually."

Traw testified that the Owners Organization did not own Lakewood Drive, Greenbelt Reserve R, or any property within the Subdivision. Traw stated that in his personal capacity, he owns the section of Lakewood Drive between the widths of his property. He acknowledged that he does not own any portion of the Harbour Village property, and that the Association owns Greenbelt Reserve R. But Traw believes that

13

he, along with the members of the Association, owns Greenbelt Reserve R as members of the Association. Traw further testified that he understands that none of the restrictive covenants applicable to the Subdivision apply to Harbour Village; however, he still expected the Association to do something about the Harbour Village dumpster. He later acknowledged that the restrictive covenants do not create a duty for the Association to enhance and protect the value, desirability, and attractiveness of the land nor does it give the Association the right to enforce any restrictions against any owners in the Subdivision. In fact, the Walden on Lake Conroe Community Improvement Association (CIA) has the right to enforce the use restrictions in the Subdivision.

Traw testified that the restrictive covenants do not allow him to start demolishing improvements on someone else's property. Although the covenants do not state that he could remove the enclosure around the Harbour Village dumpster or erect bollards, Traw testified that he is allowed to protect his property, although he could not identify where the covenants authorize his actions. According to Traw, the Association has a fiduciary duty, to protect the homeowners in the Subdivision created in the bylaws, contract, and governing documents.

Traw testified that he and other homeowners decided to install the rebar spikes on Greenbelt Reserve R in civil disobedience and he believes that the Owners Organization had standing, as property owners in the Subdivision, to sue Waste

14

Management for use of the road. He did not feel that the homeowners in the Subdivision benefitted from the agreement between the Association and Harbour Village for the use of the street to empty the dumpster. Traw testified that the restrictions require that the Association use the proceeds of the maintenance fund, which is funded by the homeowners' annual dues, for the use and benefit of the residences and that provision created a fiduciary duty and responsibility.

The final witness called by the Association was Gregory Cagle, attorney for the Association. Cagle testified that his attorneys' fees and bills representing the Association in this matter total $49,033.00 through trial. He testified that 99 percent of his practice involves condominiums and representing property owners' associations.

As the last witness, Alfred Ruemke, attorney for Traw and the Owners Organization, testified that his attorneys' fees and bills in this matter total $11,850.00 through trial. Ruemke testified that he has been an attorney for forty years and has handled many HOA cases representing HOAs and homeowners.

At the conclusion of the bench trial, the trial judge issued findings of fact and conclusions of law, found that the Association was the prevailing party for a declaratory judgment, and awarded attorney's fees. The Final Judgment provided:

> IT IS ORDERED that Defendants Traw and [Owners Organization] are permanently enjoined from modifying or destroying or causing the modification or destruction of the Reserve Property, the Roads and any improvements constructed thereon;

15

IT IS FURTHER ORDERED that Defendants Traw and the [Owners Organization] are permanently enjoined from obstructing or causing the obstruction of the use of the Reserve Property and/or Roads by the Association or any other persons;

IT IS FURTHER ORDERED that notwithstanding the permanent injunctions contained herein, Traw shall continue to be allowed to access and use the Reserve Property and/or the Roads as permitted by the Declaration provided that Traw does not modify or destroy the Reserve Property or obstruct its use by the Association or any other persons;

IT IS FURTHER ORDERED that Defendants Traw and the [Owners Organization], jointly and severally, shall pay the Association the amount of $199.00 in compensatory damages;

IT IS FURTHER ORDERED that Defendants Traw and the [Owners Organization], jointly and severally, shall pay the Association the amount of $49,033.00 in reasonable and necessary attorneys' fees;

IT IS FURTHER ORDERED that if Defendant Traw or [the Owners Organization] unsuccessfully appeals this Final Judgment to an intermediate court of appeals, the Association shall recover $15,750.00 in additional reasonable and necessary attorneys' fees from the party appealing the Final Judgment;

IT IS FURTHER ORDERED that if Defendant Traw or [the Owners Organization] unsuccessfully appeals this Final Judgment to the Texas Supreme Court; the Association shall recover $13,125.00 in additional reasonable and necessary attorneys' fees from the party appealing the Final Judgment; and

IT IS FURTHER ORDERED that [The Association] is awarded post-judgment interest in all the foregoing amounts at the rate established by law.

All other relief not expressly granted herein is denied. This judgment finally disposes of all parties and all claims and is appealable.

This appeal followed.

On appeal, Traw brought five issues that challenge the Association's standing, the denial of a Motion to Dismiss, the granting of the Declaratory Judgment, whether the lawsuit is frivolous, and the award of attorneys' fees.

**Standard of Review**

We review declaratory judgments under the same standards as other judgments and decrees. Tex. Civ. Prac. & Rem. Code Ann. § 37.010. "We look to the procedure used to resolve the issue at trial to determine the standard of review on appeal." *Eisen v. Capital One, Nat'l Ass'n*, 232 S.W.3d 309, 310 (Tex. App.—Beaumont 2007, pet. denied) (citation omitted). When a declaratory judgment is entered after a bench trial, we apply a sufficiency standard to review the findings of fact and review the trial court's conclusions of law de novo. *Sw. Elec. Power Co. v. Lynch*, 595 S.W.3d 678, 683 (Tex. 2020); *In re Est. of Martinez*, No. 04-22-00708-CV, 2024 WL 697102, at *1 (Tex. App.—San Antonio Feb. 21, 2024, no pet.) (mem. op.) (citation omitted). Only conclusions of law will be reversed if they are erroneous as a matter of law. *Est. of Martinez*, 2024 WL 697102, at *1 (citation omitted); *see also BMC Software Belg., N.V. v. Marchand*, 83 S.W.3d 789, 794 (Tex. 2002).

**Analysis**

In his first issue, Traw argues that the Association lacks standing to bring this suit because it has no authority or control over the roads and no authority to enforce

the restrictions. According to Traw, the Association admitted at trial that it lacked authority over the roads and restriction enforcements, and it therefore lacked standing and cannot bring a suit for declaratory relief.

Under Texas law, standing "requires a concrete injury to the plaintiff and a real controversy between the parties that will be resolved by the court." *Heckman v. Williams Cnty.*, 369 S.W.3d 137, 154 (Tex. 2012) (citing *DaimlerChrysler Corp. v. Inman*, 252 S.W.3d 299, 304, 307 (Tex. 2008)). The inquiry into standing begins by determining whether the plaintiff has been personally injured, and the plaintiff must plead facts sufficient to show that he, rather than a third party or the public at large, suffered the injury. *Id*. at 155. "A plaintiff must affirmatively show, through pleadings and other evidence pertinent to the jurisdictional inquiry, a distinct interest in the asserted conflict, such that the defendant's actions caused the plaintiff some particular injury." *Alpert v. Riley*, 274 S.W.3d 277, 291 (Tex. App.—Houston [1st Dist.] 2008, pet. denied) (citation omitted).

At trial, the evidence established through a Special Warranty Deed that the Association is the owner of Greenbelt Reserve R in the Subdivision. Additionally, the Restrictions, also admitted as an exhibit at trial, vested in the Association the duty to maintain and operate rights-of-way (including roadways), easements and other public areas.

18

Here, the Association sued Traw for damages to the Greenbelt Reserve R, a right-of-way with an easement, caused by the unauthorized installation of bollards, and for declaratory judgment that neither Traw nor the Owners Organization are authorized to exert any control over any properties in the Subdivision not owned personally by either. At trial, Traw admitted that he installed or caused to be installed, bollards on Greenbelt Reserve R.

Based on Traw's admission that he caused bollards to be installed on Greenbelt Reserve R, property owned and maintained by the Association, the Association has demonstrated an injury caused by Traw and has established standing to sue for damages caused by Traw's actions and for declaratory judgment as to property owned and maintained by the Association. *See Alpert*, 274 S.W.3d at 291.

We overrule Traw's first issue.

Next, Traw challenges the denial of a Motion to Dismiss. In the Motion, Traw and the Owners Organization argued that under the Property Code, the Association was required to notify the owner to cure the situation. However, the record before this Court does not indicate that Traw secured a ruling on the Motion to Dismiss.

Preservation is a prerequisite to appellate review, and requires that a movant present a timely request, objection or motion and obtain a ruling or object to the trial court's refusal to rule. *See* Tex. R. App. P. 33.1(a)(2). While the record indicates that Traw and the Owners Organization filed a Motion to Dismiss, the record is absent a

19

ruling from the trial court. *See id.* Since Traw failed to obtain a ruling on the Motion to Dismiss, his complaint related to the Motion to Dismiss was waived and was not preserved for appellate review. *See id.*

We overrule Traw's second issue.

In his third issue, Traw challenges the order granting declaratory relief in several arguments. In his first argument, Traw contends that a contractual relationship is required to bring a declaratory action. In his second argument, Traw asserts that declaratory relief is not appropriate because there is no controversy. According to Traw, the Association has no control or authority over the roads in the Subdivision and Traw, as a homeowner, owns the roads under the strip and gore doctrine.

A declaratory judgment is a remedial measure that determines the rights of the parties and affords relief from uncertainty with respect to rights, status, and legal relationships. *See* Tex. Civ. Prac. & Rem. Code Ann. § 37.002; *see also Ysasaga v. Nationwide Mut. Ins. Co.*, 279 S.W.3d 858, 863 (Tex. App.—Dallas 2009, pet. denied). The provisions of the Uniform Declaratory Judgments Act (UDJA) do not require a contract to bring a declaratory action, and Traw fails to provide any legal authority for his argument. *See* Tex. Civ. Prac. & Rem. Code Ann. § 37.002; *Ysasaga*, 279 S.W.3d at 863.

Regarding Traw's argument that the suit lacks a controversy, as discussed above regarding the Association's standing to bring the suit, a controversy exists based on obstructions that Traw and the Owners Organization installed or caused to be installed on Greenbelt Reserve R, property that is owned and controlled by the Association. *See Alpert*, 274 S.W.3d at 291. Because a contract is not required for declaratory relief, and a controversy exists, we overrule Traw's third issue.

Next, Traw argues that this lawsuit is frivolous, without merit and unsubstantiated. According to Traw, the claims in the lawsuit are not supported by the evidence.

Generally, the term frivolous "contemplates that a claim or motion will be considered frivolous if it has 'no basis in law or fact' and 'lacks a legal basis or legal merit.'" *Smith v. 2005 Tower LLC*, No. 09-22-00350-CV, 2024 WL 3616470, at *10 (Tex. App.—Beaumont Aug. 1, 2024, pet. denied) (mem. op.) (quoting *Sullivan v. Tex. Ethics Comm'n*, 551 S.W.3d 848, 857 (Tex. App.—Austin 2018, pet. denied)) (discussing meaning of frivolous in context of TCPA lawsuit). As is clear from our discussion of Traw's other issues, this lawsuit does not meet the commonly understood definition of frivolous. The Association brought this lawsuit, which is based both on facts and the law. *See id*.

We overrule issue four.

21

In his final issue, Traw challenges the trial court's award of attorneys' fees to the Association. Traw argues that the Association did not comply with Section 209.006 of the Texas Property Code and is therefore not entitled to attorneys' fees. *See* Tex. Prop. Code Ann. § 209.006 (requiring a Board to conduct a hearing to resolve a property matter or violation when requested by a property owner).

Here, the Association did not bring the underlying lawsuit under Chapter 209 of the Texas Property Code. The Association brought this suit under the UDJA, and the UDJA authorizes a trial court to award "reasonable and necessary attorney's fees as are equitable and just." Tex. Civ. Prac. & Rem. Code Ann. § 37.009. Having determined that the UDJA authorizes an award of reasonable and necessary attorney's fees, and that the trial court heard evidence that it would be equitable and just to the Association for reasonable and necessary attorneys' fees, we overrule Traw's final issue. *See id.*

## Conclusion

Having considered and overruled all Traw's issues, we affirm the trial court's final order.

AFFIRMED.

W. SCOTT GOLEMON
Chief Justice

Submitted on March 5, 2025
Opinion Delivered July 31, 2025
Before Golemon, C.J., Wright and Chambers, JJ.